UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Civil No. 3:14cr84 (JBA) |
| *v.* | |
| RYAN RUSSOW | March 10, 2015 |

**OPINION AND RULING FOLLOWING EVIDENTIARY HEARING**

On December 4, 2014, Defendant Ryan Russow pled guilty [Doc. # 50] to conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. The Government maintains that the heroin distributed by Mr. Russow resulted in the death of a man identified as R.P., but in its plea agreement with Mr. Russow, the Government agreed not to charge under 21 U.S.C. § 841(b)(1)(C) that "death or serious bodily injury result[ed] from the use of such substance" by R.P., which would have resulted in a mandatory minimum term of incarceration for Defendant of twenty years if convicted. (Plea Agmt. [Doc. # 51] at 5.) However, the Government reserved its right at sentencing "to argue for an upward departure on the basis that the heroin distributed by the defendant contributed and/or caused the heroin overdose death of R.P." (*Id.*) An evidentiary hearing was held to determine whether the Government proved by a preponderance of the evidence that the death of R.P. resulted from ingestion of heroin sold to him by Defendant such that Defendant would be subject to a sentencing enhancement authorized by USSG § 5K2.1.

At the sentencing hearing of March 2, 2015, the Court issued an oral ruling, finding that the Government met its burden of showing that Defendant's offense resulted in R.P.'s death and imposed a sentence of 65 months' imprisonment. This ruling sets

forth in greater detail the Court's findings, which served as the basis for the upward departure and sentence.

## I.      Background

The evidentiary hearing held on February 26 and 27, 2015 established that on March 12, 2014, R.P., who had been living in Florida but had temporarily returned to his parents' Milford, Connecticut home for dental surgery, exchanged a series of text messages with Mr. Russow showing that he sought to purchase heroin from Defendant. Screen shots of R.P.'s cell phone show that at 11:13 a.m. that morning, R.P. texted Defendant to verify the quality of his product to which Defendant replied, "Shiz cool tho man." (GX18.)  R.P. further explained in response, "OK just wanna make sure.  This all I got and a 1 time thing.  Don't want crap." (*Id.*)

At 11:22 a.m., Mr. Russow affirmatively responded to R.P.'s text message query about whether he had "pens," referring to hypodermic needles to inject the heroin after it was mixed with water.  (*Id.*)  At 12:26 p.m., R.P. texted that he had arrived at Defendant's home and Mr. Russow by return text directed him to come around to the back entrance of his house.  (*Id.*)  The parties stipulated that surveillance video footage from Defendant's neighbor showed R.P. driving towards and away from Mr. Russow's home in this precise time period and that Defendant later admitted to law enforcement agents that R.P. had visited him that day.  At 12:42 p.m., approximately the time he left Mr. Russow's home, R.P. texted another person, identified as Sebastian Fonseca, from whom he had apparently unsuccessfully attempted to purchase heroin earlier that day that Mr. Russow

"got much betters to[o] so hopefully they the same,"[1] referring to the "brand" of heroin, "Much Better," stamped on the exterior of the bindle.[2]  (*Id.*)  At 12:54 p.m., R.P.'s mother had a short telephone conversation with him.  (GX19.)  This was the last telephone contact he was known to have had with anyone before he died.  Calls to R.P. thereafter went unanswered and, at 3:44 p.m., R.P.'s father called 911 upon returning home from work and finding his son slumped on the bedroom floor.  Paramedics responded within five minutes.

The paramedics found R.P. unresponsive on the floor to the left of his bed, with his head near the foot of the bed and his legs extending toward the nightstand next to the head of the bed.  (GX1 (photograph of R.P.).)  After making unsuccessful attempts to resuscitate him, a paramedic at the scene pronounced R.P. deceased.  (GX 22.)  Sgt. Thomas Bassett of the Milford Police Department, who responded to the scene, testified—and photographs introduced into evidence confirmed—that two empty bindles marked with the "Much Better" brand and a cap used to mix heroin were found on the nightstand and two unused bindles of "Much Better" were found atop a tissue box on the nightstand.  (GX9 (photograph of nightstand); GX15 (physical evidence: bindles of heroin); GX5–6 (photograph of empty bindles); GX16 (physical evidence: empty bindles).)

---

[1] On May 13, 2014, the DEA interviewed Fonseca who stated that he sold R.P. "Much Better" heroin on March 9, 2014, three days before his death, with someone named Blake Defeo delivering the product from Fonseca to R.P.  (DXA.)  On March 10, 2014, R.P. texted Defeo asking for more heroin and stated, "Im such a loser!  I couldn't even save 1 for this morning, ended up doing it at like 230 ha."  (GX23.)

[2] A bindle is a small wax envelope used by drug dealers to package heroin.

3

The EMTs moved the barrel of the syringe that they found next to R.P.'s body onto the bed so that they could safely, but unsuccessfully, attempt to revive R.P. (GX11 (photograph of syringe).) The needle was bent, had become detached from the barrel and was recovered from the carpet next to R.P.'s body. (GX8 (photograph).) Two empty unbranded bindles of heroin were found in a trash can on the bed, mixed in with and partially covered by other refuse. (GX12–13 (photographs).) R.P. had blood on his face, which Sgt. Basset testified had not yet become dried (GX1 (photograph of R.P.'s body)), and there were blood stains on a chair on the opposite side of the nightstand (GX3–4 (photographs of chair).)

The toxicology report revealed the presence of morphine-free in the blood and 6-MAM-free in the urine of R.P., according to an autopsy report from the Office of the Chief Medical Examiner. (GX21.) Dr. Susan S. Williams, who performed the autopsy and submitted specimen for the toxicology report, testified that heroin in the body is rapidly broken down, but morphine and 6-MAM are both metabolites of heroin, with 6-MAM being a telltale marker for the presence of heroin. The autopsy report determined that the cause of death was "acute heroin toxicity" and the "final manner of death" was "accident." (*Id.*)

## II.    Discussion

USSG § 5K2.1, a policy statement, provides if "death resulted" from an offense:

> [T]he court may increase the sentence above the authorized guideline range.
>
> Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend

on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

The Second Circuit directs that to "determine whether this Policy Statement is applicable, the court should use the preponderance of the evidence standard to determine whether death resulted. If the court finds by a preponderance of the evidence that death resulted, the court may depart upward. Because the questions whether to depart and if so, by how much, however, are largely left to the sentencing court's discretion, the court would remain free to determine on the basis of all the factors described above (plus any other relevant factors) whether to depart and if so, how far." *United States v. Cordoba-Murgas*, 233 F.3d 704, 710 (2d Cir. 2000).

From the foregoing, the Court finds that the Government has proven that Mr. Russow sold heroin to R.P. at around 12:30 p.m. on March 12, 2014 that was stamped "Much Better," that R.P. used no other heroin source that day, that R.P. injected Defendant's "Much Better," and less than three hours later was found dead from acute heroin toxicity. Defendant maintains that because R.P. apparently obtained "Much Better" from Fonseca three days prior to his death and because two empty unbranded bindles were found inside the trashcan on R.P.'s bed, the Government has failed to meet its burden of proving that the heroin sold by Defendant resulted in R.P.'s death on March 12, 2014. But R.P.'s text message of March 10, 2014 stated that he had used all the heroin that had been provided by Fonseca and he sought unsuccessfully to obtain more. The inference from R.P.'s text messages is that if he still had a supply of heroin in his home on

5

March 12, 2014, he would not have sought out heroin from Defendant that day.  Thus, it is more likely than not that the heroin that caused his death was that provided to him by Defendant that day.  Likewise, because R.P. was seeking out heroin on March 12, 2014 from Fonseca, then from Defendant, it is unlikely that the empty unbranded bindles were used that day.  Accordingly, the Court concludes that the Government has proven by a preponderance of the evidence that the heroin sold to R.P. by Defendant resulted in R.P.'s death.

Having made this factual finding, in imposing a sentence the Court had to determine whether to depart upward from the applicable advisory guidelines and, if so, how much.  *See Cordoba-Murgas*, 233 F.3d at 710.  Defense counsel maintains that USSG § 5K2.1 is not applicable where, as here, the heroin sold resulted in an accidental overdose and there was no additional conduct by the defendant—beyond selling the heroin—that contributed to the death.  The text of the policy statement, however, makes clear that intent is not required, referring to whether "death *resulted*" from the offense and directing courts to then consider for sentencing purposes "the extent to which death or serious injury was intended or knowingly risked."  USSG § 5K2.1 (emphasis added).  The

threshold determination depends only on the consequences of Defendant's offense and his intent or lack thereof is considered as a mitigating or aggravating factor.[3]

In determining the extent to which a sentencing enhancement is warranted, the Court must also consider "the extent to which the offense level for the offense of conviction . . . already reflects the risk of personal injury." USSG § 5K2.1. While USSG § 2D1.1, the guideline for heroin distribution, accounts for the inherent dangerousness of the drug, it does not specifically account for death because it provides for an enhanced offense level of 38 if "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance," USSG § 2D1.1(a)(2), and 21 U.S.C. § 841(b)(1)(C) provides for a twenty-year mandatory minimum where death results.[4] Thus, absent death, Mr. Russow's offense level adjusted for acceptance of responsibility would have been 21, which in criminal history category II, yields an advisory guidelines

---

[3] In a pre-*Booker* decision the Second Circuit held that "[t]o justify an upward departure under § 5K2.1 . . . [the court] would have to find that 'death or serious injury was intended or knowingly risked.'" *United States v. Rivalta*, 892 F.2d 223, 232 (2d Cir. 1989). The text of the policy statement, however, states that it is applicable simply where "death resulted" and that the "*extent* of the increase should depend on . . . the extent to which death or serious injury was intended or knowingly risked." USSG § 5K2.1 (emphasis added). Here, Defendant knowingly risked death by selling an inherently dangerous substance to a friend of his who he knew would inject it into himself with the "pens" Defendant supplied. *See United States v. Grover*, 486 F. Supp. 2d 868, 887 (N.D. Iowa) *aff'd*, 511 F.3d 779 (8th Cir. 2007) ("Simply by selling heroin, Defendant knowingly risked that death or serious injury would result" because "[h]eroin is a dangerous controlled substance.").

[4] In *Burrage v. United States*, the Supreme Court held that a conviction for death resulting from a controlled substance under 21 U.S.C. § 841(b)(1)(C) requires the government to prove "but for" causation and reversed a conviction where the victim used numerous narcotics in addition to the heroin supplied by the defendant and thus the government could not prove that the victim would have lived "but for" his use of the heroin sold to him by the defendant. 134 S. Ct. 881, 887– 88 (2014) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013)).

range of 41 to 51 months' imprisonment (PSR [Doc. # 57] ¶ 90) and the applicable offense guideline has not already accounted for death resulting.

For example, in *United States v. Nossan*, 647 F.3d 822, 824 (8th Cir. 2011), a case with similar facts to this case, the defendant admitted to selling heroin to the decedent, whose autopsy indicated that heroin toxicity caused his death.  The defendant pled guilty to distributing heroin and the district court imposed a term of 60 months imprisonment where the advisory range was 10 to 16 months.  *Id.* at 825.  The Eighth Circuit affirmed and rejected the defendant's argument that he was not eligible for the death departure absent intent to cause the victim's death, explaining that the defendant "engaged in dangerous activities, disregarding the grave risks accompanying the use of the drugs" and his argument regarding intent was "only [a] mitigating factor[] to be considered in deciding whether and to what extent to depart upward."  *Id.* at 826–27.

Defendant's argument that R.P.'s death was accidental was considered by the Court in imposing Defendant's sentence, but having found that the heroin that Defendant sold to R.P., knowing of his addiction and his intended use by injection using Defendant's "pens," resulted in R.P.'s death, the Court concludes that an above-guidelines sentence is warranted.

IT IS SO ORDERED.

/s/_

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of March, 2015.